IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEANDRE CRITTENDEN, | ) | CASE NO. 8:15CV2427 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | TRIAL BRIEF |
| | ) | |
| PAUL HASIAK, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging the deprivation of Plaintiff's constitutional rights during a confrontation with police which led to the Plaintiff getting shot by Officer Hasiak, an Omaha police officer. The Complaint generally alleges that Officer Hasiak, while employed by the City, used excess force against Plaintiff when he was shot.

This matter is set for jury trial December 19-22, 2017.

## STATEMENT OF FACTS

Many of the facts are undisputed as set forth in the Order on Final Pretrial Conference. On November 21, 2013, Officer Paul Hasiak and Officer Eric Meads were on routine uniform patrol in a marked police cruiser in the area of 44th and Pratt Streets in Omaha, Nebraska in a marked Omaha Police Department cruiser. At approximately 8:00 p.m., Officer Meads, who was driving the cruiser, and Officer Hasiak (passenger) were in the area of 44th and Pratt Streets when they heard several gunshots being fired in that area. Plaintiff, distraught over the suicide and funeral of his brother, was driving through the neighborhood firing off rounds from an unregistered .45 caliber handgun as a "21-gun salute" to his brother. As the officers pulled up to a stop sign at 44th and Pratt Streets, they observed a black Chevrolet Tahoe with the driver's side

window down, which they viewed as suspicious because it was cold and snowing. Officer Meads turned west onto Pratt to see if they could observe any damaged property or injured persons. Seeing none, the officers decided to follow the Tahoe.

The officers caught up to the Tahoe on 44th Street as it turned onto Ruggles Street. They initiated a traffic stop using the overhead lights and the SUV pulled over to the curb in front of 4419 Ruggles Street. The driver, later identified as Plaintiff, Deandre Crittenden, jumped out of the SUV holding an "UZI" styled handgun with a long magazine in his right hand and fled from the officers in a West direction toward the backyard of 4423 Ruggles Street. Plaintiff was a convicted felon and was prohibited from carrying a weapon which is why he fled from police. Plaintiff disobeyed the lawful orders of the police to stop and drop the weapon. Officers Meads and Hasiak engaged in a foot pursuit following Plaintiff over a chain link fence, through backyards and alleyways. Plaintiff ended up at the driveway of 3915 North 44th Street, where he attempted to get rid of his gun by throwing it on the roof of the house at that location; however, the gun slid off the roof and landed on the driveway in front of the Plaintiff

Plaintiff's statement in his deposition about throwing the gun on the roof directly contradicts the allegations of his Complaint wherein he stated "The plaintiff eventually stopped running and dropped the gun down. The plaintiff turned around and raised his hands to surrender to the officers." Officer Hasiak was standing at the end of the driveway at 3915 North 44th Street and was within 20 feet of the Plaintiff. Officer Hasiak observed the gun that Plaintiff had been carrying during the chase on the driveway right in front of the Plaintiff. Officer Hasiak had his service weapon out and pointed at the Plaintiff and advised him "Don't move." This is where the stories diverge.

Plaintiff pled guilty to Terroristic Threats (Class IV Felony); Possession of a Deadly Weapon (Class II Felony); and Possession of a Deadly Weapon by a Prohibited Person (Class ID

Felony), and was sentenced to 5 years in state prison.

## DISPUTED FACTS

According to Officer Hasiak, Plaintiff crouched down and picked up the gun on the driveway and started to stand and bring the gun up. Plaintiff admits he was crouched down in the driveway, but he claims he was in that position, not to pick up the gun, but because he was winded from the foot pursuit with the police. Officer Hasiak shot the Plaintiff until he dropped the gun on the driveway and slouched onto his side.

## LAW AND ARGUMENT

### HASIAK'S RIGHT TO BE FREE FROM EXCESSIVE FORCE WAS NOT VIOLATED.

The evidence will establish no genuine dispute that the deadly force used against Plaintiff was reasonable and justified to overcome a legitimate threat.

The Fourth Amendment gives citizens the right to be free from the use of excessive force during an arrest. *Graham v. Connor,* 490 U.S. 386, 394-95 (1989). But, even though citizens have this right, a police officer making an arrest and holding a person in custody need only act reasonably under the circumstances known to him. It is accepted law that "the use of force is not constitutionally excessive if the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Nelson v. County of Wright*, 162 F.3d 986, 989 (8th Cir. 1998) citing *Graham v. Connor*, 490 U.S. 386, 394 (1989). The critical inquiry is whether the force the officer used was "objectively reasonable" in light of the information he possessed at the time. *Ludwig v. Anderson*, 54 F.3d 465, 471 (8th Cir. 1995). To determine objective reasonableness, the finder of fact must balance "the nature and quality of the intrusion on

[plaintiff's] Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.*, citing *Tennessee v. Garner*, 471 U.S. 1, 8 (1985).

The particular facts that might be considered are the severity of the crime, threat to the safety of others by the suspect, whether the suspect is actively resisting arrest, *Graham v. Connor*, 490 U.S. 386, 396 (1989), the extent of the injury to the suspect, *Foster v. Metropolitan Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990), and standard police procedures *Ludwig v. Anderson*, 54 F.3d 465, 472 (8th Cir. 1995). The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Id.* at 396-397.

If a suspect threatens the officer with a weapon, that risk of serious physical harm has been established. *Garner,* 471 U.S. at 11, 105 S.Ct. 1694. This doctrine gives "government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Blazek v. City of Iowa City,* 761 F.3d 920, 922 (8th Cir. 2014) (quoting *Stanton v. Sims,* 134 S.Ct. 3, 5 (2013)).

The present case is factually similar to *Partlow v. Stadler,* 774 F.3d 497 (8th Cir. 2014). In *Partlow*, the plaintiff, was shot by police officers after he exited his apartment building holding a shotgun. Partlow alleged that the deadly force used by officers was excessive because he wasn't pointing the gun at the officers. Partlow claimed that he did not know that officers were outside the building; that upon hearing commands to drop the gun, he tried to comply; and that he was turning to place the shotgun on the ground when he was shot.

The Eighth Circuit opined that the officers' use of force was objectively reasonable

because the officers had no way of knowing what Partlow planned to do. "Faced with these 'tense, uncertain, and rapidly evolving' circumstances, the officers made a split-second decision to apply deadly force." *Partlow,* 774 F.2d at 502. The Court further went on to reason that:

> It is possible that the officers were mistaken in perceiving that Partlow was taking aim at them. Any such mistake, however, was objectively reasonable in light of the circumstances known to the officers. *See Loch,* 689 F.3d at 966 ("An act taken based on a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment.").

*Id.* At 503.

In this case, the relevant facts are undisputed as set forth above but are summarized as follows. Plaintiff, a convicted felon, was out shooting up the neighborhood in some sort of salute to his brother who had tragically committed suicide. As luck would have it, officers, who just happened to be on routine patrol in that neighborhood, heard the shots and saw Plaintiff driving around with his windows down. After following him a short distance and initiating a traffic stop, Plaintiff fled on foot not wanting to go back to jail. Plaintiff fled with his gun and the officers gave chase. Plaintiff took officers on a circuitous path over fences, through yards and alleyways, ultimately winding up at 3915 North 44th Street where he was cornered. Once cornered, Plaintiff alleges that he crouched down to catch his breath, serendipitously right at the very spot where his gun had landed after he tossed it. Even assuming Plaintiff's new story to be true; that he tossed the gun and was crouched in front of it, but didn't know it was there, does not undermine the reasonableness of Officer Hasiak's actions or reactions.

The environment in which the interaction took place, the events preceding the interaction between Officer Hasiak and Plaintiff, and the information available to Officer Hasiak at the time of the shooting establish that a reasonable officer could believe that Plaintiff posed a threat of death to Officer Hasiak. A reasonable officer in this circumstance would have perceived that Plaintiff's action of crouching down with a deadly weapon in front of him, as a threat of death or

serious bodily harm. Even if Officer Hasiak's perception turned out to be wrong, and Plaintiff didn't know the gun was there and was just crouching down in that exact spot to catch his breath, his action was objectively reasonable. The officers had engaged in a protracted foot pursuit where the Plaintiff brandished the gun the entire time. Officers repeatedly told Plaintiff to "Stop" and to "Drop the weapon;" commands that he admittedly ignored. When Officer Hasiak cornered Plaintiff in the driveway, he was only 20 feet away and he only had seconds to react.

In light of the undisputed facts, taken together with Plaintiff's revised version of the disputed facts, a reasonable officer would have had probable cause to believe that Plaintiff posed a threat of serious physical harm, and any mistake in believing that he posed such a threat was objectively reasonable. Accordingly, Officer Hasiak is entitled to a judgment on the merits.

PAUL HASIAK, Defendant


s/ Michelle Peters
MICHELLE PETERS, No. 20021
Deputy City Attorney
Attorney for Defendant
804 Omaha/Douglas Civic Center
1819 Farnam Street
Omaha, NE 68183
Telephone: (402) 444-5115
Fax: (402) 444-5125
Michelle.peters@cityofomaha.org


CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 11, 2017, I filed this **TRIAL BRIEF** with the Clerk of the Court using the CM/ECF system, which is to send notification of such filing to the attorneys of record.

/s/ Michelle Peters